# APPENDIX A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------

CHAVA HERMAN,                          :
on behalf of plaintiff and a class,    :
                                       :
                Plaintiff,   :
                                       :
         vs.            :     Case No. 13-cv-4831(CS)
                                       :
COLLECTO INC., and                     :
US ASSET MANAGEMENT INC.,              :
                                       :
           Defendants.  :

---------------------------------------------------------

## REPLY MEMORANDUM IN SUPPORT OF
## <u>PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>

Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois   60603-3593
(312) 739-4200
(312) 419-0379 (FAX) (may use for service of pleadings)
Email address for service:   courtecl@edcombs.com

Abraham Kleinman
KLEINMAN, LLC
626 RXR Plaza
Uniondale, New York 11556-0626
(516) 522-2621
(888) 522-1692 (FAX)

# TABLE OF CONTENTS

I.      THE CLAIM..................................................................................................1

II.     DEFENDANTS HAVE NOT ESTABLISHED ANY ARBITRATION AGREEMENT...3

III.    DEFENDANTS HAVE WAIVED ANY RIGHTS UNDER THE ARBITRATION
        CLAUSE..................................................................................................6

IV.     DEFENDANTS PURCHASE AND COLLECT CONSUMER DEBTS....................8
        A.      Decisions Reject Defendants'Objection.................................................13
        B.      Because Statutory Damages Are Awarded to the Class As A Whole, Claim Forms
                May Be Used to Verify the Debts Are Consumer.....................................15

V.      DEFENDANTS' OTHER OBJECTIONS ARE ALL BASED ON THEIR MERITLESS
        "CONSUMER"
        ARGUMENT...............................................................................................16
        A.      Numerosity............................................................................................16
        B.      Commonality and Predominance..............................................................16
        C.      Typicality...............................................................................................16
        D.      Adequacy...............................................................................................17
        E.      Superiority............................................................................................ 20

VI.     CONCLUSION............................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Annunziato v. Collecto, Inc.,* 293 F.R.D. 329 (E.D.N.Y. 2013) .................................................... 16

*Butto v. Collecto, Inc.*, 290 F.R.D. 372 (EDNY 2013).................................................. 2, 13, 14, 15

*Carrigan v. Central Adjustment Bureau, Inc.,* 494 F.Supp. 824, 826 (N.D.Ga. 1980) ................. 9,

*Castro v. Green Tree Servicing LLC, et al*, 959 F.Supp.2d 698, 709-710 (S.D.N.Y. 2013) .......... 2

*Diaz v. Residential Credit Solutions*, 297 F.R.D. 42 (E.D.N.Y 2014)(*Diaz I*) .................... 2,16, 19

*Diaz v. Residential Credit Solutions, Inc.*, 299 F.R.D. 16 (E.D.N.Y. 2014)(*Diaz II*)..................... 2

*Easterling v. Collecto, Inc.*, 692 F.3d 229 (2nd Cir. 2012)............................................................ 9

*Grant v. Forgash*, No. 95APE06-792, 1995 WL 765154 , 1995 Ohio App. LEXIS 5900, *13

    (Ohio App. Dec. 26, 1995).................................................................................................... 5

*Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 n.4 (7th Cir. 1974) ........................ 14

*In re A.B.*, 308 Ill.App. 3d 227, 236, 719 N.E.2d 348 (2nd Dist. 1999) .......................................... 4

*In re CBC Companies, Inc. Collection Letter Litigation*, 181 F.R.D. 380, 385 (N.D.Ill. 1998) .. 14

*In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162-163 (2d Cir. 2000) .................................. 6

*Kalstein v. Collecto, Inc*, Case No. 13-cv-2621(ADS)(AKT), 2015 WL59246, *4 (E.D.N.Y.

    2015) .................................................................................................................................. 16

*Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) .................................................................... 16

*Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991).............................................................. 7

*Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d

    156, 159 (2d Cir. 2010)....................................................................................................... 6

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 198 F.R.D. 503, 506

(N.D.Ill. 2001)................................................................................................ 14

*Nyankojo v. North Star Capital Acquisition*, 298 Ga. App. 6; 679 S.E.2d 57 (2009) .................. 4

*Padilla v. Payco General American Credits, Inc.*, 161 F.Supp.2d 264 (S.D.N.Y. 2001).............. 9

*Pelfrey v. Educational Credit Mgmt. Corp.*, 71 F.Supp.2d 1161, 1166 (N.D.Ala. 1999) ............. 9

*PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997)......................... 6

*Quiroz v. Revenue Production Management, Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008)............ 16

*Ramirez v. Palisades Collection, LLC,* 250 F.R.D. 366,   371 (N.D. Ill. 2008) .......................... 14

*Romano v. Williams & Fudge, Inc.*, 644 F.Supp.2d 653 (W.D.Pa. 2008) ...................................... 9

*Sandoval v. City of Chicago*, 07 C 2835, 2007 WL 3087136,................................................... 14

*Selburg v. Virtuoso Sourcing Group, LLC*, No. 1:11-cv-1458-RLY-MJD, 2012 WL 4514152

(S.D. Ind., 2012)........................................................................................... 13, 14

*Smith v. Progressive Fin. Servs., Inc.*, No. 6:12-cv-1704-MC, 2013 WL 3995004 (D. Ore. Aug.

1, 2013) ................................................................................................................ 9

*Technology in Partnership, Inc. v. Rudin*, 538 Fed.Appx. 38 (2d Cir. 2013)................................ 7

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002)....................... 7

*Trujillo v. Apple Computer*, 578 F. Supp. 2d 979 (N.D.Ill. 2008).................................................. 5

*Wilkerson v. Bowman*, 200 F.R.D. 605, 609 (N.D. Ill. 2001)................................................. 14, 15

*Wise v. Cavalry Portfolio Services, LLC*, at *6 ..................................................................... 3, 14

*Yee v. Ventus Capital Servs.*, C 05-03097 RS, 2006 WL 1310463, 2006 U.S. Dist. LEXIS 32180,

*10 (N.D. Cal. May 12, 2006) ................................................................................... 4

**Statutes**

15 U.S.C §§1692e ............................................................................................ 1

15 U.S.C. §§1692g ...................................................................................... 1, 16

15 U.S.C 1692e ................................................................................................ 1

15 U.S.C 1692e(10) .......................................................................................... 2

15 U.S.C 1692e(2) ........................................................................................ 1, 2

15 U.S.C 1692e(2)(10) ..................................................................................... 1

15 U.S.C§1692k ............................................................................................. 19

Fed. R. Evid. 1001 ........................................................................................... 4

Fed. R. Evid. 801(c), 802 ................................................................................. 4

Fed.R.Civ. P. 30(b)(6) ...................................................................................... 7

Fed.R.Civ. P. 23(a) and (b)(3) ....................................................................... 20

## I.     THE CLAIM

Collecto, Inc., on behalf of its wholly owned subsidiary, U.S. Asset Management, Inc.,

has been attempting to collect from plaintiff, Chava Herman, an alleged AT&T Mobility cellular

phone debt incurred for personal, family or household purposes and not for business purposes.

(Herman Dep. Tr.  p. 19, lines 3-6, pp. 24-25, lines 24-7, Exhibit B).   On or about January 24,

2013, Collecto, Inc., sent plaintiff the form letter it uses as the initial letter which it sends to

consumers, referred to as a "101 Letter." (Burns Dep. Tr. pp. 29-30; lines 3-16; p. 31, lines 4-10.

Exhibit C; Def. Resp. to Pl. Requests For Admission No. 3, Exhibit D).     In Count II of the

Complaint, plaintiff alleges that defendants violated 15 U.S.C. §§1692g, 1692e, 1692e(2), and

1692e(2)(10) by including the amount of "other accounts" on Exhibit A without identifying the

other accounts.   As a result the amount listed as the "total due" does not represent the amount

that is due on the one debt that is identified or any other identifiable debt.     Further, it is unclear

who the current creditor or owner of the debt is with respect to the unidentified "other accounts."

The information concerning the owner of the identified account pertains solely to the identified

account.

Defendants' failure to notify the consumer of the identity of the creditor of the "other

accounts" violates §1692g of the FDCPA which requires a "notice of debt" containing "(1) the

amount of the debt; [and] (2) the name of the creditor to whom the debt is owed;. . . [.]"

The 101 Letters referenced "other accounts," but only provided the disclosures required

by §1692g with respect to the identified account.   The 101 Letters did not provide the amount of

the debt and the name of the creditor for the unidentified account(s), thereby violating the

FDCPA.

Defendant contends (Defs' Opposition Br. p. 11) that plaintiff must demonstrate that the

missing disclosures "was not provided in other correspondence sent to the consumer."   This

argument is without merit.   Section 1692g of the FDCPA provides for a notice of debt, not a

series of communications with information scattered throughout from which an astute debtor might be able to discern the information required by §1692g. "[T]he express wording of §1692g requires that all of the information listed in the provision be contained within a single communication to the consumer."  *Castro v. Green Tree Servicing LLC, et al*, 959 F.Supp.2d 698, 709-710 (S.D.N.Y. 2013).

Moreover, defendants violated §§1692e, 1692e(2), 1692e(10) because the defendant sent collection letters that misrepresented the total amount due. Specifically, the total amount due stated on the collection letter was not representative of the total amount due on the identified debt.

Based on the foregoing claims plaintiff seeks to certify a class of (a) all individuals in New York (b) to whom Collecto, Inc., sent a letter referring to "other accounts" (c) which other accounts are in an amount other than $0.00 (d) where the letter was sent on or after July 11, 2012 and before July 31, 2013.   There are 9003 accounts that satisfy the class definition. (Defs. Responses to Pl. 2nd Request for Interrogatories, <u>Exhibit E</u>).

Defendants contend that plaintiff's class definition is flawed because it does not require that the letter in question relate to a consumer debt (Def. Opp. p. 13).    However, there is no evidence that defendants purchase or collect debts other than consumer debts.

In any event, it is not uncommon for courts to routinely make minor revisions to class definitions. *Diaz v. Residential Credit Solutions*, 297 F.R.D. 42 (E.D.N.Y 2014)(*Diaz I*)("the identity of class members can easily be resolved by modifying the plaintiff's proposed class definition")(certification denied, subsequently granted in *Diaz v. Residential Credit Solutions, Inc.*, 299 F.R.D. 16 (E.D.N.Y. 2014)(*Diaz II*)); *Butto v. Collecto, Inc.*, 290 F.R.D. 372 (EDNY 2013)(court held that amended class definition alleviated the concern raised by defendants in opposition to class certification);

*Wise v. Cavalry Portfolio Services, LLC*, 3:09-cv-86, 2010 WL 3724249 (D. Conn. Sept. 15, 2010)(class definition revised during class certification briefing to address defendant's concerns). District Courts have the power and discretion to amend class definitions as appropriate. *Diaz I* 297 F.R.D. at 54.

Defendants make numerous other meritless arguments in their opposition. Additionally, defendants assert for the first time since the filing of this action in July 2013, that an arbitration agreement exists. This assertion is not only untimely, but it is also without merit. This untimely disclosure was not only a waste of the parties' time and expenses, but also the time of this Court which has been heavily involved in this case through status hearings, discovery motions, as well as conducting a settlement conference.

## II.   DEFENDANTS HAVE NOT ESTABLISHED ANY ARBITRATION AGREEMENT.

For several reasons, defendants have failed to establish any enforceable arbitration agreement.

First, there is no competent evidence of the terms to which defendant alleges plaintiff agreed. The alleged arbitration clause is in Exhibit 2 to the affidavit of the AT&T paralegal (Doc. 57). The affidavit states that Exhibit 2 to his affidavit "is the Wireless Customer Agreement effective as of the date the Wireless Service Agreement was established with Chava Herman." (Doc. 57, page 2 of 2, par. 5) The alleged date of the transaction is March 16, 2009.

Paragraph 9.1 of Exhibit 2, at the top of p. 17 of Exhibit 2, states, "@2010 AT&T Intellectual Property. All rights reserved." Furthermore, each page of Exhibit 2 states, in the lower left corner, "v2010.3.4C".

Whatever Exhibit 2 is, it is not an agreement that was in use during 2009, and is certainly not what it is represented to be in the affidavit of the AT&T paralegal.

Next, the (inapplicable) arbitration agreement (at par. 2.2) states that "AT&T and you

3

agree to arbitrate all disputes and claims between us."  It later states that "References to 'AT&T,' 'you,' and 'us' include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of services or Devices under this or prior Agreements between us."

There is no competent evidence that US Asset Management is a "successor" or "assign" or acquired the plaintiff's account from AT&T.    The AT&T paralegal's affidavit states that the company's "records reflect that the accounts referenced above were sold to US Asset Management, Inc."  (Document 57, p. 2 of 2, par. 6) However, the paralegal does not claim to have been involved in or have personal knowledge of any sale, and the alleged records showing the transfer are not provided.

Testimony, whether live or in the form of an affidavit, to the effect that the witness has reviewed alleged business records and that the records show X violates the hearsay rule (Fed. R. Evid. 801(c), 802) and original documents rule (Fed. R. Evid. 1001), and is incompetent.   The records are the evidence and must be introduced after a proper foundation is provided.   *Yee v. Ventus Capital Servs.*, C 05-03097 RS, 2006 WL 1310463, 2006 U.S. Dist. LEXIS 32180, *10 (N.D. Cal. May 12, 2006) ("[T]he business records exception to the hearsay rule makes the notes themselves admissible, [but] the custodian's attempt to explain and interpret what those notes mean is not competent evidence."); *Nyankojo v. North Star Capital Acquisition*, 298 Ga. App. 6; 679 S.E.2d 57 (2009) (attempt by alleged purchaser of debt to prove transfer based on similar affidavit rejected:   "We have held that testimony regarding the contents of business records, unsupported by the records themselves, by one without personal knowledge of the facts constitutes inadmissible hearsay."); *In re A.B.*, 308 Ill.App. 3d 227, 236, 719 N.E.2d 348 (2nd Dist. 1999) ("Under the business records exception . . . it is the business record itself, not the testimony of a witness who makes reference to the record, which is admissible . . . . In other words, a witness is not permitted to testify as to the contents of the document or provide a

4

summary thereof; the document speaks for itself").

A witness who has not seen or heard the events in question cannot "testify" by regurgitating the content of alleged business records. "There is no hearsay exception . . . that allows a witness to give hearsay testimony of the content of business records based only upon a review of the records." *Grant v. Forgash*, No. 95APE06-792, 1995 WL 765154 , 1995 Ohio App. LEXIS 5900, *13 (Ohio App. Dec. 26, 1995). *See generally, Trujillo v. Apple Computer,* 578 F. Supp. 2d 979 (N.D.Ill. 2008), condemning the inclusion in an affidavit of information supplied by others.

The other defendant, Collecto, does not even claim to be a successor or assign.   Neither defendant appears to fall within any of the other categories listed in the (inapplicable) arbitration agreement.

The AT&T paralegal further states that "Attached hereto and incorporated by reference are acknowledgment of agreement to the AT&T Mobility Wireless Customer Agreement dated March 16, 2009 which was executed by Chava Herman as a requirement of her becoming a subscriber of AT&T Wireless services with regard to account numbers 3057780369 and 3057780377.  (Exhibit 1)."  (Doc. 47, page 1 of 2, par. 4)   The paralegal does not claim to have been present or to have observed what was presented to Ms. Herman.   The only pages that bear her electronic signature state:

[phone number]

03/16/2009

I agree to the Customer Service Summary (CSS), Terms of Service, Rate Plan and features brochure for the services described in the CSS, all of which were presented to me prior to my signing below.  If buying an iPhone, I agree that use of the iPhone acts as an acceptance of the Apple and third party terms and conditions included with the iPhone.

[signature]

Defendant would have the Court assume that the other pages are what was presented to plaintiff, but there is no business record or testimony based on personal knowledge that actually

says that.   Given the fact that <u>Exhibit 2</u> is not what the AT&T paralegal says it was, and that the affidavit appears to have been prepared in a manner that was grossly negligent if not intentionally false, no assumptions should be indulged with respect to the other pages.

For each of these reasons, defendants have completely failed to establish, by competent evidence, any enforceable arbitration agreement that has anything to do with this matter.

## III.    DEFENDANTS HAVE WAIVED ANY RIGHTS UNDER THE ARBITRATION CLAUSE

This case was filed in July 2013.   Defendants answered on August 26, 2013, asserting affirmative defenses which did ***not*** include an arbitration clause and accompanying class waiver. Over the next 18 months, there were extensive proceedings and discovery – defendants' response to the class certification motion is item 57 on the docket.   The Court indicated its views on the merits, leading to plaintiff dismissing Count I and proceeding on Count II only.

On January 16, 2015, defendants asserted for the first time that plaintiff signed an arbitration agreement, which includes a class action waiver.

The Second Circuit has held that a party can waive its right to arbitration "when it engages in protracted litigation that prejudices the opposing party." *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000), quoting *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997). "There is no bright-line rule ... for determining when a party has waived its right to arbitration," but courts consider such factors as "(1) the time elapsed from commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice." *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 163.   "The key to a waiver analysis is prejudice." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002) (per curiam). "We have recognized two types of prejudice: substantive prejudice and prejudice due to excessive cost and time delay." *Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce,*

*Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010). Substantive prejudice might occur "when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration"; time and expense prejudice "can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay and expense." *Thyssen*, 310 F.3d at 105, quoting *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991).

For example, a delay of 15 months, during which there was extensive discovery and court rulings, constitutes waiver. *Technology in Partnership, Inc. v. Rudin*, 538 Fed.Appx. 38 (2d Cir. 2013).

In the present case, there was a delay of 18 months, coupled with extensive discovery, and in which the Court indicated its views on the merits, as a result of which plaintiff dismissed one of the two counts of the complaint.   During this period, defendant did not refer to arbitration once.   Plaintiff pursued the case as a class action, incurring time and expense in doing so.

In fact, during the deposition of John Burns, the Vice President of Collecto, who was produced under Fed.R.Civ. P. 30(b)(6) as the person most knowledgeable about defendants' bona fide error defense and about Chava Herman's account, testified as follows:

Q:   So what do you understand to be Collecto's defense or defenses to this lawsuit?

[Form Objection by Mr. Elliot]

A:   I understand our defenses that the allegations as to the violation is not valid; and that beyond that, it is not, not a valid complaint.   That if the item was erroneously put on the letter, it was an error in processing and was not, would not have been done had we known otherwise.

(Burns Dep. Tr. p.16; lines 16-2 Exhibit C).   Mr. Burns has been employed by Collecto, Inc. for over 20 years, and has held positions within Collecto as high as Senior Vice President, Chief Financial Officer.   In his position he supervised other senior employees such as the Vice President of Compliance and Risk Management.   Further, in preparation for his deposition on

7

September 12, 2014, Mr. Burns met with Collecto's defense counsel, Jon Elliot; the litigation

manager in the Compliance Department, Peter Garland; and Collecto's in-house counsel,

Matthew Clark.

Mr. Burns never mentioned the applicability of an alleged arbitration clause during his

deposition or in response to a direct inquiry concerning defendants' defenses to the litigation.

Not only did Mr. Burns fail to mention it during his deposition, but defendants also omitted

arbitration from their affirmative defenses.    The first time defendants mentioned an alleged

arbitration clause is approximately four (4) months after discovery closed in this case.   The

factual basis on which an arbitration clause is claimed to exist is facially inaccurate, and plaintiff

has been deprived of any opportunity to explore the matter.   This is clearly untimely and

prejudicial to plaintiff.

Defendants had an obligation to disclose the alleged arbitration agreement in their Rule

26(a)(1) disclosures, which they failed to do (Exhibit G).   As such plaintiff objects to the use of

the alleged arbitration agreement.

## IV.    DEFENDANTS PURCHASE AND COLLECT CONSUMER DEBTS

Defendants claim that the Court cannot assume that each of the accounts were for

personal, family or household purposes, as opposed to business purposes.   Like the 2010

arbitration agreement supposedly used in a 2009 transaction, this is disingenuous.



(Exhibit F



(Exhibit F).

Moreover, John F. Burns, Vice President of Collecto, Inc., testified:

> Q: And what is the nature of Collecto's business?
>
> A: The nature of Collecto's business is accounts receivable management, which can be any number of different types of services.
>
> Q: For example, what would some of those services be?
>
> A: Medical billing service, third-party collection service, customer service department for a client, the collection of purchased collection accounts.

(Burns Dep. Tr. pp.9-10; lines 18-4. Exhibit C).



Additionally, Paul Leary Jr[2]., the CEO of Collecto, Inc., testified during his deposition that U.S. Asset Management (a wholly owned subsidiary of Collecto), the alleged owner of plaintiff's debt, purchases consumer debts:

> Q: What type of debts does U.S. Asset Management collect–excuse me, purchase?

---

[1]   *Smith v. Progressive Fin. Servs., Inc.*, No. 6:12-cv-1704-MC, 2013 WL 3995004 (D. Ore. Aug. 1, 2013);   *Padilla v. Payco General American Credits, Inc.*, 161 F.Supp.2d 264 (S.D.N.Y. 2001); *Easterling v. Collecto, Inc.*, 692 F.3d 229 (2nd Cir. 2012); *Carrigan v. Central Adjustment Bureau, Inc.*, 494 F.Supp. 824, 826 (N.D.Ga. 1980); *Pelfrey v. Educational Credit Mgmt. Corp.*, 71 F.Supp.2d 1161, 1166 (N.D.Ala. 1999); *Romano v. Williams & Fudge, Inc.*, 644 F.Supp.2d 653 (W.D.Pa. 2008).

[2]   Mr. Leary also testified that he is the president of U.S. Asset Management. (Leary Deposition Tr. pp.21-22; lines 23-1. Exhibit H).)

A:     That entity has purchased telecommunications debts and student loan debts and call it banking debts.

Q:     And what would banking debt entail?

A:     It was bank loans. *It was loans to consumers*.

(Leary Dep. Tr. p. 21; lines 12-19. <u>Exhibit H</u>). Emphasis added.   Mr. Leary also testified that

Collecto, Inc., is the sole collector for debts owned by U.S. Asset Management. (Leary Dep. Tr.

pp. 23-24; lines 25-19. <u>Exhibit H</u>).

Defendants contemporaneously treated the accounts as being for personal purposes.

Defendants treated the FDCPA as applicable and attempted to provide required notices. Mr.

Burns testified as follows about the 101 Letter:

Q:     Do you know over what period of time Exhibit A has been in use?

A:     You are talking about the letter?

Q:     Yes. The form of Exhibit A, yes.

A:     Well, we have always used collection letters in our process of managing accounts. And there is, you know, there are initial letters, what we call letter one's in various formats. There may have been slight changes in the language but, you know, the same letter has been essentially used for many years.

Q:     When you say letter one's, what do you mean?

A:     *The first letter that goes to the **consumer**, that would be, that would need to have the mini Miranda, the validation notice, you know, to any other specific information, the disclosure of licenses and permits if it is in a jurisdiction that requires that information on the letters. So the letter one is the first notice to the **consumer** simply to give them their validation notice and advise them of the fact that, you know, we are managing the account for the client.*

Q:     Is this [Exhibit A] a letter one?

A:     Yes.

Q:     How do you know?

A:     I know by the content of it and I know by the code down below where it says 101 in the code that is in the bottom of the letter.

Q:     Can you identify for me on the letter where that code is?

A:     On the bottom part of the letter under the words Personal and Confidential, there
       is PDP-5186532-101. 101 is the reference to the code of that letter.

Q:     And does Collecto have a way of determining on its accounts whether a 101 letter
       has been sent?

A:     Yes.

Q:     How would it do that?

A:     It would go to the account notes. Any time a letter is sent, any time a letter is
       requested, any time mail is returned, the information goes on the account notes for
       that particular account.

Q:     Are these account notes searchable?

A:     I- - Yes.

Q:     Is this the first notice sent to Chava Herman?

A:     I believe it was. I would need to check the account notes probably to–

Q:     And why do you believe that it was?

A:     Well, because it is the first letter that we would send.

(Burns Dep. Tr. pp. 29-31; lines 3-10. Exhibit C).(Emphasis added.)

       Mr. Burns' testimony makes it clear that the 101 letter is a consumer collection letter.

The fact the letter contains mini Miranda and validation of debt language makes it clear that the

letter is intended as the first letter sent to consumers, and as such was designed to comply with,

and avoid liability pursuant to the FDCPA, a consumer protection statute, not applicable to

business debts.   Mr. Burns further testified:

Q:     Please walk me through the entire process of what would determine if this letter
       [Exhibit A] would be sent to a debtor. So when I say this letter, meaning with the
       code 101 that you identified, that you testified regarding earlier.

A:     Well, basically in this particular case, we purchased a group of accounts from
       AT&T Mobility.

Q:     So when you say we, are you referring to Collecto or U.S, Asset Management?

11

A:    U.S. Asset Management which is owned 100 percent by Collecto.

Q:    Please continue.

A:    So the account was purchased along with other accounts in a bulk sale transaction. And then once we owned the account, we would then typically do some scrubbing of the account, which means we would check to see if the bankruptcy had been filed on the account, check to see if the consumer has been, is still alive, see whether she or he is deceased. . . [.]

(Burns Dep. Tr. pp.49-50; lines 19-16. <u>Exhibit C</u>).   Mr. Burns testimony implies that all of the accounts that receive a 101 Letter from Collecto are consumer accounts.   Mr. Burns did not indicate that the scrub of the accounts included a determination of whether the business was still operating or defunct, which would be important if Collecto was collecting business debts.

Mr. Burns further testified that "it is not common with telecom debts to have multiple accounts" (Burns Dep. Tr. p.128; lines 12-13. <u>Exhibit C</u>). Again, this is indicative of consumer telecommunication debts; not business telecommunication debts.   If Collecto was collecting business debts, it would be common for there to be multiple telecommunication accounts associated with one business.   Throughout Mr. Burns deposition he used the term "consumer" countless times in reference to the debtor.   Burns never used the term "business" in reference to a debtor, generally or specifically.

(<u>Exhibit F</u>). Plaintiff testified that her account was for personal purposes (Herman Dep., p. 25, lines 6-7, <u>Exhibit B</u>).

Although defendants contend that a few of the 9003 accounts identified may be comprised of business accounts, defendants have failed to identify a single account in the 18 months that this case has been pending. Even when specifically asked to identify all business accounts, defendants failed to do so. Plaintiff's Interrogatory No. 13 requests that the defendants identify all persons satisfying the class definition.   Plaintiff's Interrogatory No. 14 states "If you contend that any of the persons who are described in the preceding interrogatory incurred the

debts sought to be collected for business purposes, identify the persons and state the facts upon which you base your contention."    Defendants objected to the request, but never identified a single business account. (Defendants Responses to Plaintiffs Interrogatories Nos. 13 and 14, Exhibit I).    Defendant is not allowed to withhold information during discovery, and then assert it as defense afterwards.

Moreover, Defendants presents a number of convoluted arguments that the class is not certifiable because the 9003 account consist of different types of debts. (Defs' Opposition Br. pp. 12, 19 and 23). However, this representation is in stark contrast to Defendants' admission that "[t]he 9003 account letters involve wireless accounts." (Defs' Opposition Br. p. 16).

### A.    Decisions Reject Defendants' Objection

Defendants contention that this case is not appropriate for class certification because a few of the 9003 accounts may have been business accounts has been rejected by other New York district courts.

In *Butto v. Collecto, Inc.,* 290 F.R.D. 372 (E.D.N.Y. 2013), Collecto was attempting to collect a Verizon Wireless debt. Collecto asserted the same argument that it could not distinguish between consumer debts and business debts.    In that case, the court "rejected the argument that the need to separate consumer debts from commercial debts precluded certification" *Id* at 378. The *Butto* court concluded that based on the 18,949 letters sent to Verizon customers "common sense would dictate that at least some percentage of these were sent to Verizon Wireless customers as opposed to Verizon Business and Telecom customers" *Id* at 377.    "Contrary to the defendant's assertion, the need to determine the consumer nature of a debt does not automatically preclude class certification."    *Id* at 382 (internal citations omitted); *See also Selburg v. Virtuoso Sourcing Group, LLC*, No. 1:11-cv-1458-RLY-MJD, 2012 WL 4514152 (S.D. Ind. 2012).

In *Butto* the court concluded that the wireless accounts were consumer accounts.    The same reasoning applies here.    If the accounts at issue were business accounts, there would be

13

multiple accounts with different phone numbers in the name of the business.   This scenario according to Burns was not typical with defendants' telecom debts, an indicia that the debts were consumer debts, not business debts.   Business debts would include the name of the business on the account in addition to any individual's name, thereby making it clear that it was a business account. To the extent defendants contend a few of the 9003 accounts are business accounts, this can be readily ascertained by a ministerial review of the account statements.

Defendants' claim that the possibility of business accounts falling within the class definition is a bar to class certification, must be rejected.   *Butto v. Collecto, Inc.*, 290 F.R.D. 372, 382 (EDNY 2013); *Sandoval v. City of Chicago*, 07 C 2835, 2007 WL 3087136, at *7 (N.D. Ill. 2007(defendant cannot thwart class certification by merely raising unsupported defenses); *Ramirez v. Palisades Collection, LLC,* 250 F.R.D. 366,   371 (N.D. Ill. 2008) ("[C]ertification should not be thwarted simply because [defendant] speculates that it may raise various unsupported defenses against different class members.").

Other courts have held that "the need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action.   If that need alone precluded certification, there would be no class actions under the FDCPA."   *Wilkerson v. Bowman*, 200 F.R.D. 605, 609 (N.D. Ill. 2001);   *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 198 F.R.D. 503, 506 (N.D.Ill. 2001) ("If the need to show whether each loan transaction was a consumer rather than a commercial one barred a class action, there could be no FDCPA class actions, because only consumer loans come under FDCPA."); *In re CBC Companies, Inc. Collection Letter Litigation*, 181 F.R.D. 380, 385 (N.D.Ill. 1998) (denying motion to decertify, holding that if business versus personal debt ruined commonality then it would be impossible to bring a FDCPA class action if there were a chance a possible class member used a credit card for business purposes, which would be "contrary to the clear remedial goals of the FDCPA."); *Selburg v. Virtuoso Sourcing Group, LLC*, No. 1:11-cv-1458, 2012 WL

4514152 (S.D. Ind., 2012); *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 n.4 (7th Cir. 1974).   As a result, courts have routinely granted class certification over a defendant's speculative assertion that the class is not ascertainable because it requires an inquiry as to whether an individual incurred a consumer debt or a non-consumer debt. *Wise v. Cavalry Portfolio Services, LLC*, at *6.

Further, even if defendants cannot differentiate between consumer debt and non-consumer debt for the 9003 accounts, this fact alone does not preclude class treatment. Class members may be asked a single question to determine whether they are entitled to relief. *Butto* 290 F.R.D. at 383; *Wilkerson* 200 F.R.D. at 610.(the fact that class certification. . .may require the parties to ask the individual class members one question does not automatically establish that individual issues predominate.).   "The Court does not find it a particularly arduous to ask potential class members the simple question of whether the individuals debt at issue qualifies as a consumer debt. " *Butto* 290 F.R.D. at 383.

**B.   Because Statutory Damages Are Awarded to the Class As A Whole, Claim Forms May Be Used to Verify the Debts Are Consumer**

One reason defendants' "consumer" argument is generally rejected is that in an FDCPA class action seeking only statutory damages, the damages are "such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector". 15 U.S.C. §1692k (a)(2)(B).   The amount of the damages within that range depends on facts common to the class as a whole   – "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional." 15 U.S.C. §1692k (b)(2).

Where, as here, it is clear that defendants' business was the collection of consumer debts

and that most of the debts are consumer, it is proper to enter judgment for "such amount as the court may allow" in favor of the defined class. Class members seeking to participate in the recovery can then be asked to submit claim forms verifying that the accounts were not used primarily for business purposes. Because the defendants' liability is not affected, there is no valid objection to this procedure.

## V.  DEFENDANTS' OTHER OBJECTIONS ARE ALL BASED ON THEIR MERITLESS "CONSUMER" ARGUMENT

The remainder of defendants' objections to class certification are nothing more than a rephrasing of their speculative contention that a few of the 9003 accounts may not be consumer accounts.

### A.  Numerosity

Defendants claim that since some of the debts may not be consumer, the court cannot find numerosity.   Once this is rejected, a class of 9003 is sufficiently numerous.   While "[t]here is no magic minimum number that will breathe life into a class, . . . generally, courts will find a class sufficiently numerous when it comprises forty or more members" *Annunziato v. Collecto, Inc.,* 293 F.R.D. 329, 335 (E.D.N.Y. 2013)(internal citations omitted). "Numerosity is presumed at a level of 40 members." *Kalstein v. Collecto, Inc*, Case No. 13-cv-2621(ADS)(AKT), 2015 WL59246, *4 (E.D.N.Y. 2015).

### B.  Commonality and Predominance

"The requisite common nucleus of operative fact exists in FDCPA claims when the controversy arises from a standard form debt collection letter."  *Quiroz v. Revenue Production Management, Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).   Here, the predominant common question is whether the reference to "other accounts" in a collection letter sent to debtors without identifying the other accounts violates the FDCPA.   There must be a showing that common issues of fact or law exist and that they affect

accounts", but failed to identify the creditor for the other accounts, and contained a total amount due which reflected the amount due on the identified account as well as the unidentified account. Further, the current creditor and amount due was not provided for the unidentified account, thus the 101 letter failed to comply with §1692g.

### D.   Adequacy

Plaintiff, Chava Herman has, and will continue to adequately represent the class. Plaintiff has demonstrated that she has no conflicts of interest with the class since the onset of this case when plaintiff rejected defendants' October 10, 2013 individual Rule 68 Offer of Judgment. (Exhibit J); (Herman Dep. Tr. pp.52:5-53:5, Exhibit B) Plaintiff continued to show her commitment to the class on June 18, 2014 when she appeared in person for a settlement conference with Judge McCarthy and again rejected further offers by the defendants to settle her claims individually.   In accordance with her duties as class representative, Ms. Herman has responded to defendants' discovery requests, and appeared for her deposition on September 30, 2014.   Ms. Herman has worked cooperatively with her counsel in the prosecution of this class action lawsuit.   Ms. Herman demonstrated in her deposition that she understands the claim that she is alleging in the complaint as well as her role as class representative:

Q:      Okay. Do you know what court the suit is in?

A:      The federal court.

Q:      Where?

A:      Where we met last time.

*****

Q:      In your own words, tell me what the lawsuit is about.

A:      The lawsuit is about, when I received this letter, not understanding what other accounts is, it is- - violates my rights under the FDCPA, okay, and 1692g and 1692e , that is regarding by not clarifying, in the letter, who I owe those monies to, and there's also - - let me just think for a second. You're making me nervous.

*****

17

Q:   Where?

A:   Where we met last time.

*****

Q:   In your own words, tell me what the lawsuit is about.

A:   The lawsuit is about, when I received this letter, not understanding what other accounts is, it is-- violates my rights under the FDCPA, okay, and 1692g and 1692e , that is regarding by not clarifying, in the letter, who I owe those monies to, and there's also - - let me just think for a second. You're making me nervous.

*****

A:   Okay. By not stating other accounts, exactly what it was, that could have been medical bills or something else in there which I was not aware of, and also it is misleading and deceptive.

*****

Q:   Were there other claims in the case?

A:   Yes.

Q:   What were the other claims in the case?

A:   The other claim in the case was regarding the initials and not spelling out Collecto, but it was later, after it was investigated.   That's one of their trademarks, the initials, as opposed to saying Collecto.

Q:   So what happened to that claim?

A:   It was-- I don't know if that's the proper terminology, dismissed, but we dropped it.

Q:   Were you a participant in that decision?

A:   Yes.

Q:   What are you hoping to receive if you win this suit?

A:   I'm hoping to receive that - - all the 9,000 people that are involved in this class action suit, get compensated in some way.

*****

Q:   Who decided that this should be pursued as a class action?

A:   I did.

Q:   And do you know how that decision was made?

A:   How it was made?

Q:      Yes. How did you make that decision?

A:      Because I realized I was not the only person to receive this letter.

Q:      So you intend to be a class representative?

A:      Yes.

Q:      And can you describe the duties of the class representative?

A:      Yes.

Q:      What are they?

A:      It is my responsibility to be involved with the case, to - - when there's decisions as far as settlements and to make a decision that would be best for the class, and you know, keep that in mind. To- - when I'm asked to appear in court, that I show up. When I'm asked to come to a deposition, I show up, and just to keep the - - you know, be involved in every decision and aspect of this case.

                                    ****

Q:      Now if there is a class, do you know what the class can recover, for the class?

A:      Whatever settlement is received, it's divided after, you know the attorneys fees would be paid amongst the class.

Q:      Okay. Do you have any understanding as to what the upper limits of that recovery are?

A:      By upper limits, you're talking about how much we could recover?

Q:      Uh-hum.

A:      As far as I know, it's either—I think the maximum is 500,000 or it's one percent of the net worth of the company.

(Herman Dep. pp.44-50, lines 3-1, p. 54, lines 1-13 Exhibit B)

        Plaintiff has demonstrated that she understands the number of class members, and

the maximum recovery the class can obtain pursuant to 15 U.S.C. §1692k. The adequacy inquiry

under Rule 23(a)(4) seeks to uncover conflicts of interest between the named parties and the class

they seek to represent. *Diaz I*, 297 F.R.D. at 51.   As clearly demonstrated, there is no conflict of

interest between plaintiff and the class members, and plaintiff has no interests that are

antagonistic to the proposed class members. Plaintiff has rejected two individual offers because

they failed to provide any relief for the class she seeks to represent.

Additionally, Plaintiff has retained counsel experienced in class action litigation and consumer protection laws. Class counsel is qualified, experienced and able to conduct the litigation. In *Diaz I* the court stated "the Court finds that plaintiff has satisfied the first element under Rule 23(a)(4). The Plaintiff's counsel have extensive experience in litigating matters under the FDCPA both in class actions and individual suits." *Id* at 52. The Plaintiff in *Diaz* was represented by the same counsel representing Plaintiff Chava Herman in this case.

### E. Superiority

Lastly, in determining superiority the court must examine whether a class action is superior to other methods of adjudication. Here, a class action is superior to any other alternate method for adjudicating the dispute. Simply stated, the prosecution of this case as a class action would uphold the Court's interest in a fair and efficient adjudication better than a joint action among the putative class members would. *Id* at 53.

## VI. CONCLUSION

The proposed class meets the requirements of Rules 23(a) and (b)(3). Plaintiff respectfully requests that this Court certify this action as a class action.

Respectfully submitted,

s/ Tiffany N. Hardy
Tiffany N. Hardy

Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois   60603-3593
(312) 739-4200
(312) 419-0379 (FAX) (may use for service of pleadings)
Email address for service:   courtecl@edcombs.com

Abraham Kleinman
KLEINMAN, LLC
626 RXR Plaza

Uniondale, New York   11556-0626
(516) 522-2621
(888) 522-1692 (FAX)

## CERTIFICATE OF SERVICE

I, Tiffany N. Hardy, hereby certify that on February 9, 2015, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system. I further certify that the foregoing document will be sent via U.S. Mail to:

Abraham Kleinman
akleinman@kleinmanllc.com

Jonathan D. Elliot
jelliot@znclaw.com

s/ Tiffany N. Hardy
Tiffany N. Hardy

Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

# EXHIBIT A



Redacted

EOS CCA
700 LONGWATER DRIVE
NORWELL, MA 02061

Toll Free : 1-877-917-8770
Phone Number: 1-781-753-4804

January 24, 2013

**Office Hours:**

| | |
|---|---|
| Monday - Thursday: | 8:00 AM - 9:00 PM   ET |
| Friday: | 8:00 AM - 5:00 PM  ET |
| Saturday: | 8:00 AM - 12:00 PM ET |

## NOTICE OF COLLECTION PLACEMENT

RE:
Your Account with our Client: US ASSET MANAGEMENT INC
Client Reference #:        0022
Agency Account #     6532
Original Creditor, if different from Client: AT&T MOBILITY

| | | |
|---|---|---|
| Principal: | $ | 1247.94 |
| Interest: | $ | 352.76 |
| Fees/Coll Costs: | $ | 224.64 |
| Other Accounts: | $ | 1360.25 |
| Total Due: | $ | 3185.59 |

US ASSET MANAGEMENT INC has placed your account with us for collection. This is a demand for payment of your debt. We urge you to remit payment to our office, unless you dispute this debt. If you dispute this debt, please see the reverse side of this notice for important rights.

If mailing your payment, please detach the coupon below and include with your payment in the enclosed envelope. Please complete the reverse side of the coupon if you wish to pay your bill with your credit card by mail.

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

New York City Department of Consumer Affairs License Number     0830. You may contact our office at the toll free number above during the hours noted and speak to Melissa Peralta or any available representative.

Note: Your account may be accruing interest on a daily basis; please contact our office for an exact payoff amount.

We may report information about your account to credit bureaus.

To make a payment by touch tone phone, on the web or by credit card, please see reverse side.

### PLEASE SEE REVERSE SIDE FOR IMPORTANT RIGHTS
✂ Detach Bottom Portion And Return With Payment ✂

PDP-5186532-101-012413-344-33968-148

EOS CCA
PO BOX 296
NORWELL, MA 02061-0296
FORWARD SERVICE REQUESTED

| Account # : | Client Reference # : | Total Due : |
|---|---|---|
| 6532 | 0022 | ▓▓▓▓▓ |

Client :  US ASSET MANAGEMENT INC

PERSONAL & CONFIDENTIAL
PDP-5186532-101-012413-344-33968-148

IIuluIIuuIuIuIuIuIuIuIuIuIuIIuIIuIuIuIu

*********AUTO**ALL FOR AADC 105
CHAVA HERNAN *CONFIDENTIAL*



IuuIIIIuuIuIuIuIuuIuIuIuIuIuIuIIuIIuIuIuuIuIII

EOS CCA
PO BOX 5055
NORWELL, MA 02061-5055

## FEDERAL LAW

Redacted

Unless you dispute the validity of this debt, or any portion thereof, within thirty days after receipt of this notice, we shall assume the debt to be valid. If you notify us in writing of your dispute within this thirty-day period, we will obtain verification of the debt, or a copy of a judgment against you, and a copy of such verification or judgment will be mailed to you. Upon your written request within the thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor.

## PHONE OR WEB PAYMENT

To make an automated payment via your touch tone phone, please call 877-365-9900, or to make a secure on-line payment via the web, please visit eoscca.solvemydebt.com. When prompted, please enter your account number and security code as provided below.

Account Number:  **6532**          Security Code:  **0022**

If you wish to pay by VISA or MasterCard, fill in the information below and return.

Credit Card Number                          Check One:  [ ] VISA  [ ] ████

[ ] [ ] [ ] [ ] - [ ] [ ] [ ] [ ] - [ ] [ ] [ ] [ ] - [ ] [ ] [ ] [ ]

| Payment Amount: | Expiration Date: |
|---|---|

Card Holder Name          Signature of Card Holder          Date

Redacted

First Class Mail

PRESORTED
FIRST CLASS MAIL
U.S. POSTAGE
PAID
EMDEON EXB

EOS CCA
PO BOX 298
NORWELL, MA 02061-0296
FORWARD SERVICE REQUESTED

*AUTO**ALL FOR AADC 105
CHAVA HERNAN *CONFIDENTIAL*

116 AMHUNP1 10982

# EXHIBIT B

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - -X

CHAVA HERMAN,

                        Plaintiff,


        -against-                Index No.

                                7:13-CV-04831-CS


COLLECTO, INC., and US ASSET MANAGEMENT INC.,


                    Defendants.


- - - - - - - - - - - - - - - - - - - - - -X

                    September 30, 2014

                    1:15 p.m.


DEPOSITION of CHAVA HERMAN, the Plaintiff

herein, taken pursuant to Notice, and held at the

offices of DALCO Reporting, Inc., 170 Hamilton

Avenue, White Plains, New York, before Helen

DeLucci, a Court Reporter and Notary Public of the

State of New York.



2

```
1   A P P E A R A N C E S:

2

3        KLEINMAN, LLC

4             Attorneys for Plaintiff

5             626 RXR Plaza

6             Uniondale, New York 11556-0626

7        BY:  ABRAHAM KLEINMAN, ESQ.

8

9        ZELDES, NEEDLE & COOPER, P.C.

10            Attorneys for Defendant, COLLECTO, INC.

11            1000 Lafayette Boulevard

12            Bridgeport, Connecticut 06604

13       BY:  JONATHAN D. ELLIOT, ESQ.

14

15

16

17

18

19

20

21

22

23

24
```



1  York to Florida.  If I was flying to Orlando to meet

2  a client, airfare, gas, car.

3       Q.    How about phone?

4       A.    No.

5       Q.    So you supplied your own phone services?

6       A.    Yes.

7       Q.    Did you have an office?

8       A.    Yes.

9       Q.    Where was that?

10      A.    In North Miami Beach.

11      Q.    Did that have an address?

12      A.    I don't even remember.  Let's see.

13            MR. KLEINMAN:  Don't speculate.  If you

14      know the answer to a question --

15      Q.    Well, this commercial real estate

16  employment is as recent as 2013; correct?

17      A.    I know, but I'm drawing a blank on the

18  address.

19      Q.    Were you the only person using that

20  office?

21      A.    No, no.

22      Q.    Okay.  Do you have any paperwork that

23  would indicate what the address was?

24      A.    No.



1          facts not in evidence.

2          Q.   You can answer.

3              THE WITNESS:  I'm confused.  When you

4          object and then you say you can answer, do I

5          have to answer?

6              MR. ELLIOT:  Unless he tells you not to.

7              MR. KLEINMAN:  There are going to be two

8          types of objections.  One type of objection,

9          I'm going to preserve your rights and then, at

10         a later date, the judge may say hey, your

11         answer may be stricken.  There may be another

12         type of objection.  I would say, Ms. Herman,

13         I've objected and I'm instructing you not to

14         answer.

15             So, if you give me a few moments and if

16         I'm instructing you not to answer, I'll

17         instruct you not to answer, as I've instructed

18         you that if you don't know the answer to a

19         question, don't be embarrassed by it.  You can

20         state that.

21             THE WITNESS:  Okay.

22         A.   So please repeat the question that you

23    just asked.

24         Q.   I was asking, I think, whether you used



1    your personal cell phone in connection with your

2    business at Eastern where you were trying to

3    originate accounts for them.

4            MR. KLEINMAN:  Objection.  You're

5        misstating her testimony.  You may answer.

6        A.   I may have used my cell phone.  My cell

7    phone is always primarily for personal use.

8        Q.   So you did, at one time, have one or more

9    cellular accounts with AT&T?

10           MR. KLEINMAN:  Objection.  Asked and

11       answered.  You may answer the question.

12       A.   At the same time?

13       Q.   No.  At any time.

14       A.   Possibly.

15       Q.   Possibly.  You're not sure if you had an

16   account with AT&T?

17       A.   I did have an account with AT&T.

18       Q.   So why is it possibly?

19       A.   Because you asked if I had more than one

20   account with AT&T and I don't remember.

21       Q.   Okay.  Do you remember any of the phone

22   numbers that you had with AT&T?

23       A.   No.

24       Q.   If you had an account with AT&T, who,



1        Q.   You decided to sue?

2        A.   Yes.

3        Q.   Okay.  Do you know what court the suit is

4   in?

5        A.   The federal court.

6        Q.   Where?

7        A.   Where we met last time.

8        Q.   Okay.

9        A.   I don't remember.

10       Q.   In your own words, tell me what the

11   lawsuit is about.

12       A.   The lawsuit is about, when I received this

13   letter, not understanding what other accounts is, it

14   is -- violates my rights under the FDCPA, okay, and

15   1692g and 1692e, that is regarding by not

16   clarifying, in the letter, who I owe those monies

17   to, and there's also -- let me just think for a

18   second.  You're making me nervous.

19       Q.   It's not my intention.

20       A.   Okay.  By not stating other accounts,

21   exactly what it was, that could have been medical

22   bills or something else in there which I was not

23   aware of, and also it is misleading and deceptive.

24       Q.   Is that what your attorney told you to



```
 1  say?
 2       A.   No, no.
 3       Q.   You decided that all on your own?
 4       A.   No, the FDCPA was created to protect
 5  consumers, okay, prior to these things.
 6       Q.   Prior to meeting Mr. Kleinman, had you
 7  ever heard of the FDCPA?
 8       A.   Yes.
 9       Q.   Yes?  And you went to him because of the
10  FDPCA?
11       A.   No, because I felt my rights were
12  violated.
13       Q.   That's not what you said earlier.
14       A.   Once --
15       Q.   You said you were trying to get
16  clarification.
17       A.   Correct.
18            MR. KLEINMAN:  Objection.
19       A.   Correct.
20            MR. KLEINMAN:  You asked her a question
21       and she answered.  Now you don't like the
22       answer?
23            MR. ELLIOT:  No, I'm just pointing out
24       that she answered differently before.
```



CHAVA HERMAN                        46

```
 1          MR. KLEINMAN:  Then why would you ask the
 2      same question twice?
 3          MR. ELLIOT:  That's not an objection.
 4      It's not an appropriate comment.
 5          MR. KLEINMAN:  That would be asked and
 6      answered.  So you asked a question and she
 7      responded.  I didn't make an objection.
 8  BY MR. ELLIOT:
 9      Q.   Were there other claims in the case?
10      A.   Yes.
11      Q.   What were the other claims in the case?
12      A.   The other claim in the case was regarding
13  the initials and not spelling out Collecto, but it
14  was later, after it was investigated.  That's one of
15  their trademarks, the initials, as opposed to saying
16  Collecto.
17      Q.   So what happened to that claim?
18      A.   It was -- I don't know if that's the
19  proper terminology, dismissed, but we dropped it.
20      Q.   Were you a participant in that decision?
21      A.   Yes.
22      Q.   What are you hoping to receive if you win
23  this suit?
24      A.   I'm hoping to receive that -- all the
```



1  9,000 people that are involved in this class action

2  suit, get compensated in some way.

3      Q.   What are you hoping to receive, you,

4  personally?

5      A.   Whatever is -- I can't -- I can't say

6  because it has not been settled yet.

7      Q.   What are you hoping to receive if you win?

8      A.   Some monetary benefit.

9      Q.   And do you know how that is measured?

10     A.   Yes.  It could be one percent of the

11 company's, you know, income or, I think, maximum is

12 about 500,000.

13     Q.   And that's what you expect to receive?

14     A.   No.  That's -- no.

15     Q.   I'm asking you about you.

16     A.   My -- for me, personally, I don't have the

17 a number.

18     Q.   Do you know what the term statutory

19 damages means?

20     A.   Not exactly.

21     Q.   Do you know what the term additional

22 damages means?

23     A.   Yes.

24     Q.   What does that mean to you?



1       A.   Additional damages, to me, means that --
2   any other costs involved.
3       Q.   Like?
4       A.   My -- the attorney fees.
5       Q.   Okay.  Do you have any attorney's fees in
6   this matter?
7       A.   Not at this -- I mean I will have.
8       Q.   Your attorneys are charging you for their
9   services?
10       A.   In the end.  Not -- not currently.
11       Q.   Did you lose any money as a result of
12   receiving the letter marked as Exhibit C?
13       A.   Not -- not at this time.
14       Q.   So you haven't lost any money as a result
15   of receiving that letter?
16       A.   No.
17       Q.   How might you lose money as a result of
18   receiving that letter?  Is there any, conceivable
19   way, you could lose money from receiving that
20   letter?
21       A.   Yes, by paying something that I possibly
22   don't even owe.
23       Q.   Well, you haven't paid; correct?
24       A.   No.



**CHAVA HERMAN**                                    **49**

```
 1        Q.    And you don't intend to; correct?
 2        A.    I don't know.
 3        Q.    Who decided that this should be pursued as
 4   a class action?
 5        A.    I did.
 6        Q.    And do you know how that decision was
 7   made?
 8        A.    How it was made?
 9        Q.    Yes.  How did you make that decision?
10        A.    Because I realized I was not the only
11   person to receive this letter.
12        Q.    So you intend to be class representative?
13        A.    Yes.
14        Q.    And can you describe the duties of the
15   class representative?
16        A.    Yes.
17        Q.    What are they?
18        A.    It is my responsibility to be involved
19   with the case, to -- when there's decisions as far
20   as settlements and to make a decision that would be
21   best for the class, and, you know, keep that in
22   mind.  To -- when I'm asked to appear in court, that
23   I show up.  When I'm asked to come to a deposition,
24   I show up, and just to keep the -- you know, be
```



1   involved in every decision and aspect of this case.

2        Q.   And what, if anything, do you expect to

3   receive as a result of being a class representative?

4        A.   As a class representative, I would like to

5   have, you know, some monetary benefit, but I don't

6   know what that would be at this time.

7        Q.   Do you know if this case has been

8   designated a class action by the court?

9        A.   It's not been certified yet.

10       Q.   Okay.  What is -- there was a filing fee

11   in connection with this matter; correct?

12       A.   Yes.

13       Q.   Do you know how much that was?

14       A.   No.  I think approximately $200.  I don't

15   know exactly.

16       Q.   Did you pay it or did your attorney pay

17   it?

18       A.   No, my attorney laid it out.

19       Q.   Are there other costs that are likely to

20   be incurred in connection with this case?

21       A.   Yes.

22       Q.   Such as, in your understanding?

23       A.   I believe for the certification.

24       Q.   Meaning what?



1        A.    I don't know exactly.  I'm not an

2   attorney, but I do believe there's filing fees and

3   things involved with that.

4        Q.    Okay.  What's your understanding of your

5   responsibility for any costs incurred in this

6   matter?  What is your understanding?

7              MR. KLEINMAN:  Objection.  It assumes

8         facts not in evidence.  There have been -- have

9         there been any costs levied on anyone?

10       Q.    What is your understanding of your

11  responsibility for any costs that may be incurred in

12  this matter?  If you don't have an understanding --

13       A.    That I'm responsible for the attorney

14  fees.

15       Q.    Are you responsible for anything else?

16       A.    I guess the filing fees and things that

17  they do on my behalf.

18       Q.    Okay.  And under what circumstances, do

19  you know, are you supposed to pay those things?

20       A.    When the case is settled.

21       Q.    What if it's not settled?

22       A.    I mean it has to end sometime.

23       Q.    What if it's resolved by a judge?

24       A.    Then it's -- then it's resolved.  I mean



1   that's the end of it.  So at that point --

2        Q.   What if you lose?

3        A.   Then I would have to, you know, work out

4   arrangements with my attorneys.

5        Q.   Okay.  Do you know if any settlement

6   offers have been made in this case?

7        A.   Yes.

8        Q.   What's the first time you recall hearing

9   about any settlement offer that my client made?

10  What's the first time you remember hearing about any

11  settlement offer --

12       A.   You want the content of that offer, the

13  dates?

14       Q.   We can get to that, but when did you first

15  hear about any settlement offer that my client made?

16       A.   Several months ago.

17       Q.   In what context?  Was it at the pretrial

18  hearing, the settlement conference?

19       A.   I believe there was one before that.  I

20  don't remember.

21       Q.   Do you know what that offer was?

22       A.   I believe it was that I would receive a

23  thousand dollars and that the attorney's fees would

24  be paid for me.



1       Q.    And that was unacceptable to you; correct?

2       A.    Yes.

3       Q.    Because?

4       A.    Because it doesn't do anything for the

5   class.

6       Q.    Okay.  Do you recall receiving this?

7

8             (A document was handed to the witness.)

9

10            MR. KLEINMAN:  Thank you.  Has this been

11      marked?

12            MR. ELLIOT:  Wait a moment.

13            MR. KLEINMAN:  Usually it is the other way

14      around.

15      A.    Yes.

16      Q.    And when did you receive that?

17      A.    At some -- at some point last year.  I

18  don't remember exactly.

19            MR. ELLIOT:  Let's mark it as Exhibit E.

20

21            (Defendants' Exhibit E, TWO-PAGE DOCUMENT,

22      OFFER OF JUDGMENT, DATED 10/10/13, was marked

23      for identification.)

24



1        Q.    Now, if there is a class, do you know what

2   the class can recover, for the class?

3        A.    Whatever settlement is received, it's

4   divided after, you know, the attorney fees would be

5   paid, amongst the class.

6        Q.    Okay.  Do you have any understanding as to

7   what the upper limits of that recovery are?

8        A.    By upper limits, you're talking about how

9   much we could recover?

10       Q.    Uh-hum.

11       A.    As far as I know, it's either -- I think

12   the maximum is 500,000 or it's one percent of the

13   net worth of the company.

14            MR. ELLIOT:  Can I have C and D.

15

16            (Defendants' Exhibit F, PLAINTIFF'S

17        RESPONSES TO DEFENDANTS' FIRST INTERROGATORIES

18        AND DOCUMENT REQUESTS TO PLAINTIFF, was marked

19        for identification.)

20

21       Q.    I'm going to hand you a document marked as

22   F.  Have you seen that document before?

23       A.    Yes.

24       Q.    And did you sign the answers to the



EXHIBIT C

1

Volume 1

Pages 1-140

Exhibits:  See index

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK


- - - - - - - - - - - - - - x

CHAVA HERMAN, on behalf

of plaintiff and a class,

     Plaintiff


  v.       CIVIL ACTION

         No. 13-cv-4831-CS

COLLECTO, INC., and

US ASSET MANAGEMENT, INC.,

    Defendants

- - - - - - - - - - - - - - x


    DEPOSITION

     OF

   JOHN F. BURNS, JR.


   EOS CCA

   700 Longwater Drive

   Norwell, Massachusetts 02061


   Friday, September 12, 2014

   2:08 p.m.


REPORTER:  Carol A. Fierimonte, CSR

**TRANSCRIPT OF PROCEEDINGS**

9

1       school, is that correct?

2    A.  Well, I was in the graduate business

3       school.

4    Q.  Understood.  Okay.  And when did you earn

5       your degree?

6    A.  I earned an undergraduate degree in 1968

7       from Columbia College.

8    Q.  Located -- where is Columbia College

9       located?

10   A.  New York City.

11   Q.  Are you familiar with the company named US

12      Asset Management?

13   A.  Yes, I am.

14   Q.  What is the nature of its business?

15   A.  The nature of its business is the purchase

16      of delinquent accounts from creditors for

17      their own collection.

18   Q.  And what is the nature of Collecto's

19      business?

20   A.  The nature of Collecto's business is

21      accounts receivable management, which can

22      be any number of different types of

23      services.

24   Q.  For example, what would some of those

25      services be?

10

1   A.  Medical billing service, third-party

2      collection service, customer service

3      department for a client, the collection of

4      purchased collection accounts.

5   Q.  Does Collecto ever collect delinquent

6      debts?

7   A.  Yes.

8   Q.  What is the relationship between US Asset

9      Management and Collecto?

10   A.  US Asset Management is a wholly-owned

11      subsidiary of Collecto.

12   Q.  And does Collecto and US Asset Management

13      have common offices?

14   A.  Yes.

15   Q.  Can you identify their common offices?

16   A.  Located at 700 Longwater Drive in Norwell,

17      Massachusetts.

18   Q.  And can you identify their common

19      officers?

20   A.  Oh, officers, I am sorry.

21   Q.  That is okay.

22   A.  The common officer would be Paul Leary,

23      Jr.

24   Q.  And what role does Paul Leary, Jr. have

25      within Collecto?

11

1   A.   He is the Chief Executive Officer.

2   Q.   And what role does Paul Leary, Jr. have

3        with US Asset Management?

4   A.   He is the President and Treasurer.

5   Q.   Does Collecto and US Asset Management have

6        common employees?

7   A.   US Asset Management does not have

8        individual employees.

9   Q.   Can you state for me the organizational

10       structure of US Asset Management?

11            MR. ELLIOT:  Objection to form.

12       You can answer if you understand it.

13   A.  It is a corporation organized under the

14       laws of Delaware.

15   Q.   And can you identify all of the officers

16       of US Asset Management?

17   A.   Paul Leary, Jr. is the President and

18       Treasurer, and I believe Paul Leary, Sr.

19       is the Clerk or Secretary.

20   Q.   Are there any other offices held by anyone

21       else?

22   A.   No.

23   Q.   Are you being produced today as the person

24       most knowledgeable about Collecto's bona

25       fide error defense?

12

1    A.  Yes, I am.

2    Q.  Did you do anything to prepare for your

3        role as the person most knowledgeable

4        about Collecto's bona fide error defense?

5    A.  Yes.

6    Q.  What did you do?

7    A.  I met with the internal staff who are

8        familiar with the case and also spoke to

9        our defense counsel regarding the case to

10       get familiar with basically the

11       information that I needed to know.

12   Q.  Can you identify the members of the

13       internal staff that you met with?

14   A.  Peter Garland, Matthew Clark, Jackie

15       Chandler, Steven Madden.

16   Q.  Anyone else?

17   A.  I think that is it.

18   Q.  And what is Peter Garland's role as it

19       relates or what is his position as it

20       relates to Collecto?

21   A.  He is the litigation manager in the

22       Compliance Department.

23   Q.  Is he an attorney?

24   A.  I believe, yes, he has his law degree.

25   Q.  Do you know if he is licensed to practice

13

1      law in any jurisdiction?

2    A.   No, I don't believe so.

3    Q.   And what is Matthew Clark's position with

4      Collecto?

5    A.   He is the internal general counsel.

6    Q.   And what is Jackie Chandler's position?

7    A.   She is a technician in the IT department.

8    Q.   And what is Steven Madden's position?

9    A.   He is also a programming manager in the IT

10      department.

11    Q.   Did you speak with anyone else regarding

12      your testimony today as the person most

13      knowledgeable about the defendant's bona

14      fide error defense?

15    A.   I spoke with our counsel, Jon Elliot.

16    Q.   Anyone else?

17    A.   That is all I can think of.

18    Q.   Did you do any research regarding

19      Collecto's bona fide error defense?

20    A.   Could you explain what you mean by

21      research?

22    Q.   Did you review any documents?  Did you --

23    A.   I reviewed all of the documents associated

24      with the case, the complaint, the

25      interrogatories, the answers, all of the

16

1    A.   I read the accounts notes several times to

2         identify the information that was

3         contained in the report.

4    Q.   Are you aware that you are here today

5         because a lawsuit has been filed against

6         Collecto and US Asset Management?

7    A.   Yes.

8    Q.   What do you understand to be the basis of

9         the lawsuit against Collecto?

10   A.   I understand that the complaint had two

11        issues.  One was the use of the trade name

12        EOS CCA, and the second issue was the

13        issue relative to additional charges that

14        a consumer might have with a particular

15        customer.

16   Q.   So what do you understand to be Collecto's

17        defense or defenses to this lawsuit?

18            MR. ELLIOT:  Objection to form.

19        You can answer.

20   A.   I understand our defenses that the

21        allegation as to the violation is not

22        valid; and that beyond that, it is not,

23        not a valid complaint.  That if the item

24        was erroneously put on the letter, it was

25        an error in the processing and was not,

29

1       has, you know, the full knowledge of the

2       information.

3   Q.  Do you know over what period of time

4       Exhibit A has been in use?

5   A.  You are talking about the letter?

6   Q.  Yes.  The form of Exhibit A, yes.

7   A.  Well, we have always used collection

8       letters in our process of managing

9       accounts.  And there is, you know, there

10      are initial letters, what we call letter

11      one's in various formats.  There may have

12      been slight changes in the language but,

13      you know, the same letter has been

14      essentially used for many years.

15  Q.  When you say letter one's, what do you

16      mean?

17  A.  The first letter that goes to the

18      consumer, that would be, that would need

19      to have the mini Miranda, the validation

20      notice, you know, to any other specific

21      information, the disclosure of licenses

22      and permits if it is in a jurisdiction

23      that requires that information on the

24      letters.  So the letter one is the first

25      notice to the consumer simply to give them

30

1       their validation notice and advise them of

2       the fact that, you know, we are managing

3       the account for the client.

4    Q.   Is this a letter one?

5    A.   Yes.

6    Q.   How do you know?

7    A.   I know by the content of it and I know by

8       the code down below where it says 101 in

9       the code that is in the bottom of the

10      letter.

11   Q.   Can you identify for me on the letter

12      where that code is?

13   A.   On the bottom part of the letter under the

14      words Personal and Confidential, there is

15      PDP-5186532-101.  101 is the reference to

16      the code of that letter.

17   Q.   And does Collecto have a way of

18      determining on its accounts whether a 101

19      letter has been sent?

20   A.   Yes.

21   Q.   How would it do that?

22   A.   It would go to the account notes.  Any

23      time a letter is sent, any time a letter

24      is requested, any time mail is returned,

25      the information goes on the account notes

1      for that particular account.

2   Q.   And are the account notes searchable?

3   A.   I -- yes.

4   Q.   Is this the first notice sent to Chava

5      Herman?

6   A.   I believe it was.  I would need to check

7      the account notes probably to --

8   Q.   And why do you believe that it was?

9   A.   Well, because it is the first letter that

10      we would send.

11          MS. HARDY:  I would like for the

12      witness or I would like for the court

13      reporter to mark Exhibit E.  Actually, I

14      am sorry.  Forgive me. I don't want to go

15      to Exhibit E.  Bear with me one moment.  I

16      would like Exhibit D marked.

17          (Document marked as Exhibit D

18      for identification.)

19          (Witness perusing document.)

20   Q.   Mr. Burns, have you seen this document

21      before?

22   A.   Yes.

23   Q.   And can you turn to -- well, I am sorry.

24      What is this document?

25   A.   It is responses to requests for

49

1      items which, you know, may be specific to

2      this particular client.

3  Q.  Was the Herman account past due at the

4      time that Exhibit A was sent, referring to

5      Burns DEP Exhibit A11?

6  A.  Was the account past due?  Well, the

7      accounts that get placed with us were

8      accounts that are purchased by our

9      subsidiary are all accounts that have been

10     charged off by the original creditor, and

11     the normal reason for charging the account

12     off is that it is unpaid.

13  Q.  So was the account past due?

14  A.  Yes.

15  Q.  Who owns Ms. Herman's debt?

16  A.  Who owns the debt?

17  Q.  Yes.

18  A.  US Asset Management.

19  Q.  Please walk me through the entire process

20     of what would determine whether this

21     letter would be sent to a debtor.  So when

22     I say this letter, meaning with the code

23     101 that you identified, that you

24     testified regarding earlier.

25  A.  Well, basically, in this particular case

50

1       we purchased a group of accounts from AT&T

2       Mobility.

3   Q.  So when you say we, are you referring to

4       Collecto or US Asset Management?

5   A.  US Asset Management, which is owned 100

6       percent by Collecto.

7   Q.  Please continue.

8   A.  So the account was purchased along with

9       other accounts in a bulk sale transaction.

10       And then once we owned the account, we

11       would then typically do some scrubbing of

12       the account, which means we would check to

13       see if the bankruptcy had been filed on

14       the account, check to see if the consumer

15       has been, is still alive, see whether she

16       or he is deceased.  And then we would try

17       to verify the address on the account by

18       using a service that would, you know,

19       verify addresses from a data source.  And

20       then once we essentially went through the

21       scrubbing of the account for various

22       items, we would make a determination as to

23       which particular accounts would be set up

24       for initially for letters to go out.  And

25       then this, this particular letter for that

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHAVA HERMAN,                          :
                                       :
                   Plaintiff,          :
                                       :        No. 7:13-cv-04831-CS
v.                                     :
                                       :        **RESPONSES TO REQUESTS**
COLLECTO, INC., and                    :        **FOR ADMISSIONS**
US ASSET MANAGEMENT INC.,              :
                                       :
                   Defendants.         :
                                       :

Defendants Collecto, Inc. d/b/a EOS CCA and US Asset Management Inc.,

hereby respond to plaintiff's Request for Admissions, reserving until trial all objections to

the relevance or admissibility of the responses, as follows:

**REQUESTS FOR ADMISSIONS:**

1.      Exhibit A was sent by Collecto, Inc., on behalf of US Asset Management,

Inc.

**RESPONSE:  Admits that Exhibit A was sent to collect amounts owed to U.S.
Asset Management.**

2.      Exhibit A is the first letter Collecto, Inc. sent plaintiff regarding the

debt described therein.

**RESPONSE:  Denies.**

3.      Exhibit A is a form letter intended for use by Collecto, Inc. as the initial

letter sent to a putative debtor by Collecto, Inc.

**RESPONSE:  Admits that Exhibit A is form of letter that was used as the initial
letter on this and other accounts.**

4.      The correct corporate name of "EOS CCA", is Collecto, Inc.

4.      The correct corporate name of "EOS CCA", is Collecto, Inc.

**OBJECTION:  Defendants object to this request on the ground that it is unduly
vague, argumentative and seeks admission of a legal conclusion.  Without
waiving such objection, denies.**


5.      Exhibit A does not refer to Collecto Inc.

**RESPONSE:  Admits.**


6.      Exhibit A claims a "total due" of $3,185.59, of which $1,360.25 is described

as "other accounts," referring to one or more accounts other than the one that is

identified.

**RESPONSE:  Denies.**


7.      There are more than 40 (a) individuals in New York (b) to whom

defendants sent a letter using the name "EOS CCA" without reference to Collecto, Inc.

(c) on or after July 11, 2012 and on or before July 31, 2013.

**RESPONSE:  Admits.**


8.      There are more than 100 (a) individuals in New York (b) to whom Collecto,

Inc. sent a letter using the name "EOS CCA" without reference to Collecto, Inc. (c) on

or after July 11, 2012 and on or before July 31, 2013.

**RESPONSE:  Admits.**

9.     There are more than 500 (a) individuals in New York (b) to whom Collecto, Inc. sent a letter using the name "EOS CCA" without reference to Collecto, Inc. (c) on or after July 11,2012 and on or before July 31, 2013.

**RESPONSE:  Admits.**

10.     There are more than 1,000 (a) individuals in New York (b) to whom Collecto, Inc. sent a letter using the name "EOS CCA" without reference to Collecto, Inc. (c) on or after July 11, 2012 and on or before July 31, 2013.

**RESPONSE:  Admits.**

11.     There are more than 40 (a) individuals in New York (b) to whom Collecto, Inc. sent a letter referring to "other accounts" (c) on or after July 11, 2012 and on or before July 31, 2013.

**RESPONSE:  Admits.**

12.     There are more than 100 (a) individuals in New York (b) to whom Collecto, Inc. sent a letter referring to "other accounts" (c) on or after July 11, 2012 and on or before July 31, 2013.

**RESPONSE:  Admits.**

13.     There are more than 500 (a) individuals in New York (b) to whom Collecto, Inc. sent a letter referring to "other accounts" (c) on or after July 11, 2012 and on or before July 31, 2013

**RESPONSE:  Admits.**

3

14.    There are more than 1,000 (a) individuals in New York (b) to whom Collecto, Inc. sent a letter referring to "other accounts" (c) on or after July 11,2012 and on or before July 31, 2013.

**RESPONSE:  Admits.**

15.    Collecto, Inc.'s net worth is more than $500,000.00.

**RESPONSE:  Denies.**

16.    Collecto, Inc.'s net worth is more than $1,000,000.00.

**RESPONSE:  Denies.**

17.    Collecto, Inc.'s net worth is more than $10,000,000.00.

**RESPONSE:  Denies.**

18.    Collecto, Inc.'s net worth is more than $50,000,000.00.

**RESPONSE:  Denies.**

19.    US Asset Management, Inc.'s net worth is more than $500,000.00.

**RESPONSE:  Denies.**

20.    US Asset Management, Inc.'s net worth is more than $1,000,000.00.

**RESPONSE:  Denies.**

21.    US Asset Management, Inc.'s net worth is more than $10,000,000.00.

**RESPONSE:  Denies.**

22.     US Asset Management, Inc.'s net worth is more than $50,000,000.00.


**<u>RESPONSE</u>:  Denies.**


Date: December 27, 2013                    THE DEFENDANTS
                                           COLLECTO, INC. and
                                           US ASSET MANAGEMENT, INC.


                                   By: _____
                                           Jonathan D. Elliot

                                           Zeldes, Needle & Cooper, P.C.
                                           1000 Lafayette Boulevard
                                           Bridgeport, CT  06604
                                           Tel:    203-333-9441
                                           Fax:    203-333-1489
                                           E-Mail:  jelliot@znclaw.com

                                           Its Attorneys

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via U.S. First Class

Mail, on this date, to:

        Abraham Kleinman, Esq.
        Kleinman, LLC
        626 RXR Plaza
        Uniondale, NY 11556-0626

        Tiffany N. Hardy, Esq.
        Edelman, Combs, Latturner &
          Goodwin, LLC
        120 S. LaSalle St., #1800
        Chicago, IL 60603

Dated at Bridgeport, Connecticut on this 27th day of December 2013.

                    Jonathan D. Elliot

6

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHAVA HERMAN,                          :
                                       :
              Plaintiff,               :
                                       :     No. 7:13-cv-04831-CS
v.                                     :
                                       :     **RESPONSES/OBJECTIONS TO**
COLLECTO, INC., and                    :     **PLAINTIFF'S SECOND REQUEST**
US ASSET MANAGEMENT INC.,              :     **FOR INTERROGATORIES**
                                       :
                                       :
              Defendants.              :
                                       :

Pursuant to Fed. R. Civ. Pro. 33, the defendants respond to the plaintiff's Second Request for Interrogatories, as follows:

### General Objections

1.      Defendant objects to the Interrogatories below to the extent that they seek information protected by the attorney-client privilege and/or the work product doctrine.

2.      Defendant objects to any definitions or instructions to the extent that they impose different or greater obligations than those imposed by the Federal Rules of Civil Procedure or the Local Rules of Civil Procedure for the Eastern District of New York and are otherwise unduly burdensome.

3.      Subject to the above general objections, the defendant responds as follows:

**INTERROGATORIES:**

20.    State the date on which the name EOS CCA was registered in New York

State as a trade name for Defendant Collecto, Inc.

**RESPONSE:  An application for Certificate of Assumed name was submitted to the New York Department of State on or about December 1, 2009.**

21.    State the number, name, and address for (a) all individuals in New York

(b) to whom Collecto, Inc. sent a letter referring to "other accounts" (c) and there is an

amount other than $0.00 listed (c) on or after July 11, 2012 and on or before July 31,

2013.

**OBJECTION:  Defendant objects to providing the name and address of persons other than plaintiff on the ground that no class has been certified and the interrogatory is overbroad, and at least to that extent, irrelevant to the claims and defenses in this action.  Without waiving, and subject to such objection, during the period described a letter was sent on 9003 accounts in which the field entitled other accounts was populated with an amount other than zero.  This may include letters that were sent to businesses.**

22.    Identify the number of individuals in New York to whom Collecto sent a

letter referring to other accounts, but the alleged debtor did not have an "other account"

which Collecto was trying to collect.

**RESPONSE:  During the same period as in the response to Interrogatory No. 21, the number of accounts/individuals in New York were sent a letter that contained a field labeled "other accounts," which field was left blank, is 380,776.  This may include letters that went to businesses.**

2

23.    What does the phrase "other accounts" refer to?

**RESPONSE:** **If the field "other accounts" contains information, such information relates to other accounts placed with defendant by the same creditor referenced in the letter.**

Date: March ___/___, 2014

As to the objections:

THE DEFENDANTS
COLLECTO, INC. and
US ASSET MANAGEMENT, INC.

By: _____
    Jonathan D. Elliot

        Zeldes, Needle & Cooper, P.C.
        1000 Lafayette Boulevard
        Bridgeport, CT  06604
        Tel:    203-333-9441
        Fax:    203-333-1489
        E-Mail:  jelliot@znclaw.com

    Its Attorneys

3

**VERIFICATION**

THIS IS TO CERTIFY THAT I, _John F. Burns_ on behalf of Defendant Collecto, Inc. d/b/a EOS CCA, have read the foregoing responses to defendant's Interrogatories and state that they are true and accurate to the best of my knowledge, on this _26th_ day of _February_ 2014.

COLLECTO, INC. d/b/a EOS CCA

By: _____

Its _____

Duly Authorized



On the _26th_ day of _Feb_ 2014, before me, personally appeared _John F. Burns Jr._ who affirmed under oath the truth of the foregoing responses to interrogatories.

_____
Notary Public
My Commission Expires:

MIANNE SCHALL
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
July 2, 2015

4

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via U.S. First Class

Mail, postage prepaid, on this date, to:

Abraham Kleinman, Esq.
Kleinman, LLC
626 RXR Plaza
Uniondale, NY 11556-0626

Tiffany N. Hardy, Esq.
Edelman, Combs, Latturner &
   Goodwin, LLC
120 S. LaSalle St., #1800
Chicago, IL 60603

Dated at Bridgeport, Connecticut on this _____ day of March 2014.

Jonathan D. Elliot

5

# EXHIBIT F

CONFIDENTIAL       PURSUANT TO COURT'S CONFIDENTIALITY ORDER

CONFIDENTIAL     PURSUANT TO COURT'S CONFIDENTIALITY ORDER

EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHAVA HERMAN,                          :
                                       :
            Plaintiff,                 :
                                       :        No. 7:13-cv-04831-CS
v.                                     :
                                       :
COLLECTO, INC., and                    :        **INITIAL DISCLOSURES**
US ASSET MANAGEMENT INC.,              :        **UNDER FEDERAL RULE 26(a)**
                                       :
            Defendants.                :
                                       :

Defendants, Collecto, Inc., d/b/a EOS CCA and US Asset Management, Inc., hereby submits their initial disclosures, made pursuant to Federal Rules of Civil Procedure 26(a)(1).

DISCLAIMER: The following initial disclosures are provided in compliance with Federal Rules of Civil Procedure 26. Compliance with the rules requires the disclosure of the potential witnesses likely to have discoverable information that Defendants *may* use to support its claims or defenses, and the disclosure of documents that Defendants *may* use to support its claims or defenses. While Defendants have discovered the names and documents set forth below, this is not a list of witnesses or exhibits. Defendants are simply complying with the requirements of the rule in a good faith disclosure of potential witnesses and documents, which *may* be used to support Defendants' claims or defenses. Defendants specifically reserve the right to contest the relevance and/or admissibility of the following witnesses and documents based upon further discovery in this case.

Furthermore, Defendants also reserve the right to disclose witnesses and

documents discovered after further investigation.

(A)     The name and contact information, if known, for each individual

likely to have discoverable information that the disclosing party may use to

support its claims or defenses, unless solely for impeachment, identifying the

subjects of the information:

**John Burns, Vice President, collection policies and procedures of
defendant.**

(B)     The following categories of documents and tangible things that are

currently in Defendant's possession, custody or control may be used to support

Defendant's defenses:

**Collection notes, correspondence and documents re trade name and NYC
Dept. of Consumer Affairs.**

(C)     The following is a preliminary computation of any category of

damages claimed by the Plaintiff. The Plaintiff reserves the right to change or

update the following information as this litigation progresses:

**Not applicable.**

(D)     The defendant offers for inspection and copying, as under Rule

34, the insurance certificate for the policy under which an insurance

business may be liable to satisfy all or part of a possible judgment in the

action, or to indemnify or reimburse for payments made to satisfy the claim.

**To be provided.**

Date: October ___18___, 2013

THE DEFENDANTS
COLLECTO, INC. and
US ASSET MANAGEMENT, INC.

By:_____
    Jonathan D. Elliot

    Zeldes, Needle & Cooper, P.C.
    1000 Lafayette Boulevard
    Bridgeport, CT  06604
    Tel:    203-333-9441
    Fax:    203-333-1489
    E-Mail:  jelliot@znclaw.com

Its Attorneys

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via U.S. First

Class Mail, postage prepaid, on this date, to:

> Abraham Kleinman, Esq.
> Kleinman, LLC
> 626 RXR Plaza
> Uniondale, NY 11556-0626

Dated at Bridgeport, Connecticut on this 18th day of October 2013.

Jonathan D. Elliot

# EXHIBIT H

CERTIFIED COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

C.A. No. 13 CV 4831

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

CHAVA HERMAN, on Behalf of Plaintiff          \*

and a Class,                                  \*

        Plaintiffs                            \*

v.                                            \*

COLLECTO INC. and US ASSET                    \*

MANAGEMENT INC.,                              \*

        Defendants                            \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

DEPOSITION OF PAUL E. LEARY, JR.

January 9, 2015

Jessica L. Williamson, RMR, CRR, CCP, Notary Public

  CSR No. 138795

  386416

**BARKLEY**
*Court Reporters*
barkley.com

SINCE 1972

(310) 207-8000 Los Angeles     (415) 433-5777 San Francisco     (949) 955-0400 Irvine          (858) 455-5444 San Diego
(916) 922-5777 Sacramento      (408) 885-0550 San Jose          (760) 322-2240 Palm Springs     (951) 686-0606 Riverside
(818) 702-0202 Woodland Hills  (212) 808-8500 New York City     (347) 821-4611 Brooklyn         (518) 490-1910 Albany
(516) 277-9494 Garden City     (914) 510-9110 White Plains      (312) 379-5566 Chicago          (702) 366-0500 Las Vegas
    00+1+800 222 1231 Paris          00+1+800 222 1231 Dubai          001+1+800 222 1231 Hong Kong

```
 1          IN THE UNITED STATES DISTRICT COURT

 2        FOR THE SOUTHERN DISTRICT OF NEW YORK

 3               C.A. No. 13 CV 4831

 4    *   *   *   *   *   *   *   *   *   *   *   *   *

 5  CHAVA HERMAN, on Behalf of Plaintiff     *

 6  and a Class,                             *

 7           Plaintiffs                      *

 8  v.                                       *

 9  COLLECTO INC. and US ASSET               *

10  MANAGEMENT INC.,                         *

11           Defendants                      *

12    *   *   *   *   *   *   *   *   *   *   *   *   *

13

14         TELEPHONIC DEPOSITION OF PAUL E.

15    LEARY, JR., a witness called on behalf of

16    the Plaintiff, pursuant to the Federal Rules

17    of Civil Procedure, before Jessica L.

18    Williamson, Registered Merit Reporter,

19    Certified Realtime Reporter and Notary

20    Public in and for the Commonwealth of

21    Massachusetts, at the Offices of EOS CCA,

22    700 Longwater Drive, Norwell, Massachusetts,

23    on Friday, January 9, 2015, commencing at

24    2:08 p.m.

25
```

2

BARKLEY
Court Reporters

```
 1    A P P E A R A N C E S

 2     (Present via telephone.)

 3

 4    ELELMAN, COMBS, LATTURNER & GOODMAN, LLC

 5       (By Tiffany N. Hardy, Esq.)

 6       120 S. LaSalle Street

 7       18th Floor

 8       Chicago, Illinois  60603

 9       (312) 739-4200

10       thardy@edcombs.com

11       Counsel for the Plaintiff

12

13    ZELDES, NEEDLE & COOPER, P.C.

14       (By Jonathan D. Elliot, Esq.)

15       1000 Lafayette Boulevard

16       Suite 500

17       Bridgeport, Connecticut  06604

18       (203) 333-9441

19       jelliot@znclaw.com

20       Counsel for the Defendants

21

22

23

24

25
```

3

BARKLEY
Court Reporters

1    A P P E A R A N C E S, Continued

2

3    EOS CCA

4        (By Matthew Clark, Esq.)

5        700 Longwater Drive

6        Norwell, Massachusetts   02061

7        (781) 659-1551

8        In-House Counsel for the Defendants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                            4

BARKLEY
Court Reporters

# EXHIBIT I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHAVA HERMAN,                                     :
                                                  :
                    Plaintiff,                    :
                                                  :      No. 7:13-cv-04831-CS
v.                                                :
                                                  :      **RESPONSES/OBJECTIONS TO**
COLLECTO, INC., and                               :      **INTERROGATORIES**
US ASSET MANAGEMENT INC.,                         :
                                                  :
                    Defendants.                   :
                                                  :

        Pursuant to Fed. R. Civ. Pro. 33, the defendant responds to the plaintiff's

interrogatories, as follows:

## General Objections

        1.      Defendant objects to the Interrogatories below to the extent that they seek

information protected by the attorney-client privilege and/or the work product doctrine.

        2.      Defendant objects to any definitions or instructions to the extent that they

impose different or greater obligations than those imposed by the Federal Rules of Civil

Procedure or the Local Rules of Civil Procedure for the Eastern District of New York and

are otherwise unduly burdensome.

        3.      Subject to the above general objections, the defendant responds as

follows:

## INTERROGATORIES:

        1.      Identify each person involved in answering these Interrogatories

and the information supplied by each.

**RESPONSE:  John Burns, Vice President**

2.      Identify all accounts alleged to be owed by plaintiff to:

  a.      Collecto, Inc.

  b.      US Asset Management, Inc.

**RESPONSE:  The accounts in question were not owed to Collecto, Inc., they were merely being collected by Collecto, Inc. d/b/a/ EOS CCA.  The following accounts were owed to US Asset Management, Inc.: #20-5186532 - $1,825.34; #20-5186554 - $1,374.93.**

3.      Identify all documents transmitted to plaintiff in an effort to collect the debt

described in Exhibit A by:

  a.      Collecto, Inc.

**RESPONSE: Letter 1811 on December 27, 2012
           Letter 101 on January 24, 2013
           Letter 864 on June 26, 2013 (on each account)**

  b.      US Asset Management, Inc.

**RESPONSE:  None.**

4.      Describe the procedures followed to determine the name of the creditor

to be inserted in the preparation and mailing of letters in the form of Exhibit A to

debtors and any follow-up procedures engaged in after such letters are sent, by:

  a.      Collecto, Inc.
  b.      US Asset Management, Inc.

**OBJECTION:  Defendant objects to this interrogatory on the ground that it is unduly vague, overbroad, and at least to that extent, irrelevant to the claims and defenses in this action.  Without waiving such objection, defendants state: No letters were sent by US Asset Management, Inc. ("USAM"), the creditor with respect to the accounts in question.  USAM was known to be the creditor with respect to the accounts in question, and so USAM was identified in the letter as the creditor.  Such letter was printed and mailed by MicroDynamics Group, 1400 Shore Road, Napersville, IL 60563-8765.**

5.      Describe the procedures followed to determine whether the correct creditor is named, by:

      a.      Collecto, Inc.

      b.      US Asset Management, Inc.

**<u>OBJECTION</u>:  Defendant objects to this interrogatory on the ground that it is overbroad, and at least to that extent, irrelevant to the claims and defenses in this action.  Defendant also objects to this interrogatory on the ground that it is duplicative of Interrogatory No. 4.  Without waiving such objection, defendants state: No letters were sent by US Asset Management, Inc. ("USAM"), the creditor with respect to the accounts in question.  USAM was known to be the creditor with respect to the accounts in question, as the accounts were placed with Collecto by USAM, and so USAM was identified in the letter as the creditor.**

6.      Describe the procedures followed to determine the amount of the debt owed, by:

      a.      Collecto, Inc.

      b.      US Asset Management, Inc.

**<u>OBJECTION</u>:  Defendant objects to this Interrogatory on the ground that it is overbroad, and at least to that extent, irrelevant to the claims and defenses in this action.  Without waiving such objection, defendant states:**

**(a) Collecto, Inc. bases the amount which a creditor seeks to collect on data and information provided by the creditor.**

**(b) USAM purchases accounts with certain balances and retained defendant Collecto, Inc. to collect those amounts plus additional amounts authorized by the underlying agreement with the debtor and/or permitted by law.**

7.      Describe the procedures followed to determine how multiple debts alleged to be owed by the same person are handled by:

      a.      Collecto, Inc.

      b.      US Asset Management, Inc.

**OBJECTION:  Defendant objects to this interrogatory on the ground that it is unduly vague and overbroad, and at least to that extent, irrelevant to the claims and defenses in this action.**

8.     State the name, address, title and job description of any persons who determine which debtors are sent letters in the form of Exhibit A.

**RESPONSE:  No particular individual determined to send a letter in the form of Exhibit A.**

9.     State the name, address, title and job description of each member of Collecto, Inc. or US Asset Management, Inc. who is involved in (a) drafting letters in the form of Exhibit A. (b) printing letters in the form of Exhibit A. (c) approving letters in the form of Exhibit A. (d) sending letters in the form of Exhibit A. or (e) determining whether and how "Collecto" is disclosed.

**OBJECTION:  Defendant objects to this interrogatory on the ground that it is unduly vague, overbroad, and at least to that extent, irrelevant to the claims and defenses in this action and intended to annoy, oppress and/or harass.  Without waiving, and subject to such objection, Exhibit A was printed and mailed by the mailing vendor disclosed in response to Interrogatory No. 4.**

10.     State whether information regarding accounts owned or being collected by Collecto, Inc. or US Asset Management, Inc. is retrievable by computer and, if so, each field by which data is searchable or retrievable. State whether your computers can determine (a) charge off dates, (b) date of last activity and (c) the original creditor.

**OBJECTION:  Defendant objects to this interrogatory on the ground that it is overbroad, and at least to that extent irrelevant to the claims and defenses in this action.  Without waiving, and subject to such objection, charge off dates, date of last activity and original creditor can be searched if such data is provided by the creditor in connection with the placement.**

11.     State the number, name, and address for (a) all individuals in New York (b) to whom Collecto, Inc. sent a letter using the name "EOS CCA" without reference to Collecto (c) on or after July 11, 2012 and on or before July 31, 2013.

**OBJECTION:  Defendant objects to this interrogatory to the extent it seeks the name and address of individuals other than the plaintiff on the ground that it is unduly burdensome, premature in that a class has not yet been certified, overbroad and at least to that extent, irrelevant to the claims and defenses in this action.  Without waiving this objection states that the number of people who were mailed a letter using the name "EOS CCA" in New York in the period identified is 403,645.**

12.     If you contend that any of the persons who are described in the preceding interrogatory incurred the debts sought to be collected for business purposes, identify the persons and state the facts upon which you base your contention.

**OBJECTION/RESPONSE:  Defendant objects to this interrogatory on the ground that it is unduly burdensome, premature in that a class has not yet been certified, overbroad, and at least to that extent irrelevant to the claims and defenses in this action.  Without waiving, and subject to such objections, defendant states that it does not know in each instance if the debts sought to be collected are for a business, or for a consumer purpose, since that determination may be different for each account, depending on the purpose for which the obligation was incurred.  For purposes of the FDCPA, the burden of proving that a particular debt was incurred for personal, family or household purposes is on the plaintiff.**

13.     State the number, name, and address for (a) all individuals in New York (b) to whom Collecto, Inc. sent a letter referring to "other accounts" (c) on or after July 11, 2012 and on or before July 31, 2013.

**OBJECTION/RESPONSE:  Defendant objects to this interrogatory on the grounds that it is unduly vague, overbroad, premature and unnecessarily intrudes upon the privacy of individuals not a party to this litigation.  Without waiving and subject to this objection, defendant believes that during the above period a letter containing the terms "other accounts" were sent to 389,770 persons.**

14.     If you contend that any of the persons who are described in the preceding interrogatory incurred the debts sought to be collected for business purposes, identify the persons and state the facts upon which you base your contention.

**OBJECTION/RESPONSE:  Defendant objects to this interrogatory on the ground that it is unduly burdensome, premature in that a class has not yet been certified, overbroad, and at least to that extent irrelevant to the claims and defenses in this action.  Without waiving, and subject to such objections, defendant states that it does not know in each instance if the debts sought to be collected are for a business, or for a consumer purpose, since that determination may be different for each account, depending on the purpose for which the obligation was incurred.  For purposes of the FDCPA, the burden of proving that a particular debt was incurred for personal, family or household purposes is on the plaintiff.**

15.     State the net worth of Collecto, Inc. and whether its financial statements are audited. If Collecto, Inc.'s financial statements are not audited, identify all credit applications and financial statements issued or submitted by Collecto, Inc. in the last 3 years.

**OBJECTION: Defendant objects to this request on the ground that it is premature, overbroad, and at least to that extent irrelevant to the claims and defenses in this action.  Defendant also objects to this interrogatory on the grounds that it seeks confidential, proprietary business information not known to the general public disclosure of which could be injurious to the defendant and which should not be disclosed, if at all, without the entry of an appropriate protective order.**

16.     State the net worth of US Asset Management, Inc. and whether its financial statements are audited. If US Asset Management, Inc.'s financial statements are not audited, identify all credit applications and financial statements issued or submitted by US Asset Management, Inc. in the last 3 years.

**OBJECTION: Defendant objects to this request on the ground that it is premature, overbroad, and at least to that extent irrelevant to the claims and defenses in this action.  Defendant also objects to this interrogatory on the grounds that it seeks confidential, proprietary business information not known to the general public**

**disclosure of which could be injurious to the defendant and which should not be disclosed, if at all, without the entry of an appropriate protective order.**

17.    Explain the basis for your claim that plaintiffs claims are barred to the extent that any violation of the FDCPA was unintentional, resulting from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.

**(a) Defendant's trade name was properly registered with the Town of Norwell, Massachusetts, the locale of Collecto's principal office, and was licensed with the Department of Banking for the Commonwealth of Massachusetts and numerous other regulatory authorities, including the New York City Department of Consumer Affairs. To the extent that any such regulatory authority fails to reflect such registration or license, same was unintentional, notwithstanding defendant's efforts to lodge the trade name properly with such authority and its belief that the trade name had been properly registered and/or licensed.**

**(b) Letters containing references to "other accounts," when that field is populated with an amount, provide additional information about such other accounts in chart form, even though such additional information may not be required by the FDCPA. In the case of the letter in question, the chart was omitted. It is not the defendant's intention to violate the FDCPA.**

18.    With respect to each expert whom you will or may call upon to give evidence or testimony in connection with this case, please state: (a) his name, address, telephone number, occupation, and current employment; (b) the subject matter of his expertise; (c) his educational background, academic degrees, employment history, employment experience, and any other matters which you contend qualify him as an expert; (d) the substance of all facts and opinions to which he could testify if called as a witness; (e) a summary of the grounds for each such opinion.

**OBJECTION:**  Defendant objects to this interrogatory as premature, encroaching improperly on the thought process of counsel, overbroad, and at least to that extent irrelevant to the claims and defenses in this action.

19.    Identify all insurance policies covering claims against either defendant arising or made between July 11, 2012 and on or before July 31, 2013 which contain (a) errors and omissions coverages, including such coverage as an extension of directors' and officers' liability coverages, (b) coverage for advertising injury, (c) coverage for property damage, (d) coverage for collection activities, (e) general liability coverages, or (f) any other coverage which may apply to this case.

**RESPONSE:**  See declaration page enclosed.

As to the objections:

Date: December 27, 2013

THE DEFENDANTS
COLLECTO, INC. and
US ASSET MANAGEMENT, INC.

By: _____
       Jonathan D. Elliot

Zeldes, Needle & Cooper, P.C.
1000 Lafayette Boulevard
Bridgeport, CT  06604
Tel:    203-333-9441
Fax:    203-333-1489
E-Mail:  jelliot@znclaw.com

Its Attorneys

## VERIFICATION

THIS IS TO CERTIFY THAT I, _John F. Burns Jr._ on behalf of Defendant Collecto, Inc. d/b/a EOS CCA, have read the foregoing responses to defendant's Interrogatories, and state that they are true and accurate to the best of my knowledge, on this _23rd_ day of _December_ 2013.

COLLECTO, INC. d/b/a EOS CCA

By: _John F. Burns Jr._
  _John F. Burns Jr._
Its _Vice President Corporate Services_
Duly Authorized

On the _25th_ day of _Dec_ 2013, before me, personally appeared _John F. Burns Jr._, who affirmed under oath the truth of the foregoing responses to interrogatories.

_Mrianne Schall_
Notary Public
My Commission Expires:

MIANNE SCHALL
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
July 2, 2015

9

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via U.S. First Class

Mail, postage prepaid, on this date, to:

> Abraham Kleinman, Esq.
> Kleinman, LLC
> 626 RXR Plaza
> Uniondale, NY 11556-0626
>
> Tiffany N. Hardy, Esq.
> Edelman, Combs, Latturner &
>   Goodwin, LLC
> 120 S. LaSalle St., #1800
> Chicago, IL 60603

Dated at Bridgeport, Connecticut on this 27th day of December 2013.

_____
Jonathan D. Elliot

<u>EXHIBIT J</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHAVA HERMAN,

           Plaintiff,

                        No. 7:13-cv-04831-CS

v.

COLLECTO, INC., and           **OFFER OF JUDGMENT**
US ASSET MANAGEMENT INC.,

           Defendants.

Pursuant to Rule 68 of the Federal Rules of Civil Procedure, the Defendants hereby offer to allow judgment to be taken against them, jointly and severally, in this action in favor of the Plaintiff, Chava Herman, in the amount of One Thousand One and 00/100 Dollars ($1,001.00) (inclusive of all claims for damages, compensatory, statutory or otherwise) plus costs and reasonable attorney's fees accrued to the date of this offer, to be agreed by the parties or determined by the Court upon application.

This offer of judgment is made for the purposes specified in Rule 68, and is not to be construed either as an admission that the Defendants have any liability in this action, or that the Plaintiff has suffered any damage.

Date: October 10, 2013          THE DEFENDANTS
                             COLLECTO, INC. and
                             US ASSET MANAGEMENT, INC.

                             By:_____
                                Jonathan D. Elliot

                                Zeldes, Needle & Cooper, P.C.
                                1000 Lafayette Boulevard
                                Bridgeport, CT 06604
                                Tel:   203-333-9441
                                Fax:  203-333-1489
                                E-Mail:  jelliot@znclaw.com

                              Its Attorneys

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via U.S. Certified

Mail, Return Receipt Requested, on this date, to:

> Abraham Kleinman, Esq.
> Kleinman, LLC
> 626 RXR Plaza
> Uniondale, NY 11556-0626

Dated at Bridgeport, Connecticut on this 10th day of October 2013.

Jonathan D. Elliot

ZELDES, NEEDLE & COOPER
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 LAFAYETTE BLVD.
POST OFFICE BOX 1740
BRIDGEPORT, CONN. 06601-1740



CERTIFIED MAIL

7013 1710 0001 5084 75b2



UNITED STATES POSTAGE

$ 06.11⁰

02 1M
000 4250838    OCT 10 2013
MAILED FROM ZIP CODE 0 6604

Abraham Kleinman, Esq.
Kleinman, LLC
626 RXR Plaza
Uniondale, NY 11556-0626



11556꓿0626  C014



PLACE STICKER AT TOP OF
OF THE RETURN ADDRESS